IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 11211 |
| v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting | ) | Maria Valdez |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Anthony Smith's ("Plaintiff") claim for Supplemental Security Income ("SSI") under Title XVI the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 13] is granted.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. Procedural History

Plaintiff filed his application for SSI in June 2015, alleging disability beginning on May 29, 2015 due to narcolepsy, sleep apnea, and cataplexy. (R. 142–147, 159.) His application was denied initially and again upon reconsideration. (R. 56–76.) Plaintiff appeared for a hearing before an Administrative Law Judge ("ALJ") on July 11, 2016. (R. 34–55.) He was represented by counsel. (*Id.*) A vocational expert, Pamela Warren, was also present at the hearing and testified. (*Id.*) On July 26, 2016, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. (R. 17–33.) The Appeals Council ("AC") denied review on October 28, 2016, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 1–7.)

## II. ALJ Decision

On July 26, 2016, the ALJ issued an unfavorable written determination finding Plaintiff was not disabled. (R. 17–33.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 29, 2015, his application date. (R. 22.) At step two, the ALJ found that Plaintiff suffered from severe impairments of narcolepsy and cataplexy.[2] (R. 22.) At step three, the ALJ

---

[2] Cataplexy is defined as "a condition in which there are abrupt attacks of muscular weakness and hypotonia triggered by an emotional stimulus such as mirth, anger, fear, or surprise. It is often associated with narcolepsy." *Dorland's Medical Dictionary* http://www.dorlands.com (last visited May 31, 2018).

determined that Plaintiff did not have an impairment or combination of impairments that meet or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 26)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, subject to non-exertional limitations.[3] At step four, the ALJ concluded that Plaintiff was not capable of performing his past relevant work. (R. 28.) At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed including hand packager, cleaner, and bagger. (R. 29.) Because of this determination, the ALJ found that Plaintiff is not disabled under the Act. (R. 30.)

## DISCUSSION

### III.  ALJ Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ

---

[3] At this stage, the ALJ determined Plaintiff:
    can never climb ladders, ropes, or scaffolds and must avoid all use or exposure to moving machinery and unprotected heights.
(R. 26.)

3

considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## IV. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v.*

4

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind h[is] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir.

1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

**V.     Analysis**

Plaintiff argues that the ALJ's decision should result in remand because he: (1) improperly evaluated the medical opinion evidence; (2) failed to consider whether he met the relevant Listing; (3) did not obtain medical expert testimony. For the reasons that follow, the Court finds no remandable errors.

**A. Medical Opinion Evidence**

To begin, Plaintiff argues that the ALJ improperly weighed the opinion of his treating physician, Dr. Swamy Nagubadi, M.D., who concluded that Plaintiff would not be able to work eight hours per day, five days per week on a reliable basis due to his narcolepsy. (R. 294–96.) He also opined that Plaintiff's narcolepsy impairs his concentration, and that he would require a minimum of three naps per day. (*Id.*) In his decision, the ALJ accorded "minimal" weight to the opinion of Dr. Nagubadi. (R. 28.)

Generally, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical

6

evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(c). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Plaintiff alleges that the ALJ's discussion of Dr. Nagubadi's opinion did not incorporate the necessary factors.

Here, the ALJ began by acknowledging the treating relationship between Dr. Nagubadi and Plaintiff.[4] Turning to the nature of the treatment, he noted that it had been conservative and infrequent. (R. 28.) Thereafter, the ALJ looked to the medical evidence and explained that the Plaintiff's examination findings had been unremarkable and that he had had a fair response to treatment. (*Id.*) Then, based on the rest of the record, he noted that Plaintiff was able to drive his children to and from school, despite the fact that he reported that he did not drive an automobile. (*Id.*) Thus, the ALJ did indeed address the requisite factors.

Nonetheless, Plaintiff argues that the ALJ's finding is deficient because he discounted the opinion based, in part, on unremarkable examination findings without articulating what types of findings he expected to be contained in the record for an applicant with narcolepsy. The Program Operations Manual System ("POMS"), an internal agency guideline, notes that "there are no physical abnormalities in narcolepsy" and that "laboratory studies will be normal." *DI*

---

[4] Plaintiff claims that ALJ failed to consider Dr. Nagubadi's specialty in accordance with regulations. The Court notes, however, that the ALJ referred to the doctor as Plaintiff's "treating physician" and Plaintiff has made no argument as to what other specialty Dr. Nagubadi possessed. (R. 27.)

7

*24580.005 Evaluation of Narcolepsy,* POMS, Social Security, https://secure.ssa.gov/apps10/poms.nsf/lnx/0424580005 (Sept. 26, 2016) [hereinafter *POMS DI* 24580.005]. As a result, POMS states, it is important for the ALJ to consider the medications the claimant uses and their response to the medication, and for the ALJ to obtain a description of the alleged narcoleptic attacks. *Id.* Here, the ALJ did just that. In fact, the ALJ noted that Plaintiff had fair response to his medical treatment and therapy, and declined to have his medications adjusted, suggesting he was satisfied with his treatment. (R. 27–28.) Moreover, the ALJ considered Plaintiff's reports of "excessive daytime sleepiness" and cataplexy. (*Id.*). Thus, the ALJ provided the type of consideration of Plaintiff's narcolepsy contemplated by POMS.

Next, Plaintiff claims that the ALJ engaged in impermissible cherry-picking when evaluating Dr. Nagubadi's opinion. While ALJs are prohibited from cherry-picking, *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant . . . evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding"), they are not required to discuss every piece of evidence in the record in favor of their determinations. *See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) ("[g]enerally speaking, an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence") (internal quotation marks and citation omitted).

More specifically, Plaintiff argues that the ALJ did not consider evidence showing that he was still sleepy, despite good response to medication. The evidence Plaintiff points to reveals that Plaintiff presented to Dr. Nagubadi with "excessive daytime sleepiness" and that his response to therapy was "fair" meaning he was "more functional but still sleepy on the meds." (R. 241, 249.) The ALJ did not ignore this evidence; in fact, the ALJ explained that Plaintiff continually presented for excessive daytime sleepiness and that his treatment notes indicated that he continued to have some level of symptoms. (R. 27). Moreover, the ALJ noted that Plaintiff's response to his treatment was "fair", just as it was listed in his treatment notes. (*Id.*) Therefore, the Court cannot say the ALJ cherry-picked the evidence.

Finally, Plaintiff claims the ALJ failed to explain the perceived inconsistencies between his activities of daily living and the medical evidence. In particular, Plaintiff argues the ALJ did not adequately explain how his ability to drive his children to school conflicted with Dr. Nagubadi's opinion that he would require three to four naps per day. Plaintiff turns to *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011), where the Seventh Circuit stated "ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."

Here, the ALJ contrasted Plaintiff's activities of daily living with Dr. Nagubadi's opinion. For example, the ALJ pointed out that Dr. Nagubadi believed Plaintiff was unable to drive, despite the fact that he drove his children to and from school. (R. 28.) While this alone does not support a finding that Plaintiff could sustain full-time work, the ALJ found that it cut against some of Dr. Nagubadi's

9

limitations. In sum, the Court finds that the ALJ did not err with respect to the medical opinion evidence and that his findings were supported by substantial evidence.

**B. Listing**

Next, Plaintiff takes issue with the ALJ's step three evaluation, particularly that he did not consider whether his impairments satisfied the criteria of Listing 11.02.

The parties, and the ALJ, are in agreement that there is no listing which addresses narcolepsy. Nevertheless, POMS has explained that ALJ's may turn to Listing 11.02, Epilepsy "when evaluating [the] medical severity" of narcolepsy. *POMS DI* 24580.005.[5] But, given the fact that "narcolepsy and epilepsy are not truly comparable illnesses", it is unclear how the ALJ is expected to evaluate the severity of narcolepsy. *Id.* POMS give some guidance on the matter, stating that it should be evaluated after three months of prescribed treatment. Furthermore, POMS directs ALJs "to obtain from an ongoing treatment source a description of the medications used and the response to the medication, as well as an adequate description of the claimant's alleged narcoleptic attacks and any other secondary events such as cataplexy, hypnagogic hallucinations or sleep paralysis." *Id.* In any event, POMS is an internal manual without the force of law, and does not bind the SSA. *Parker v. Sullivan*, 891 F.2d 185, 190 (7th Cir.1989).

---

[5] It is unclear if the POMS requirements were in effect at the time the ALJ issued his decision. *See id.* (noting an effective date of September 26, 2016, two months after the ALJ issued his decision).

10

To the extent that Plaintiff argues that his narcolepsy meets or equals the requirements of Listing 11.02, he has not met his burden. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (stating plaintiff "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing.")

Here, the only evidence Plaintiff points to in favor of his argument that he meets the requirements of Listing 11.02 is the opinion of Dr. Nagubadi. The first issue with this argument is that it ignores the fact that the ALJ previously discounted Dr. Nagubadi's opinion. Second, Dr. Nagubadi did not opine that Plaintiff met the requirements of Listing 11.02. Rather, he merely made findings which Plaintiff now *claims* meet the necessary requirements. The fact is, Plaintiff does not provide evidence from any acceptable medical source supporting the conclusion that he meets Listing 11.02. Accordingly, Plaintiff has not met his burden, and the Court sees no reason to disturb the ALJ's step three findings. *Keach v. Berryhill*, No. 17 C 10133, 2018 WL 1440316, at *13 (D. Mass. Mar. 22, 2018) (stating "that a mere diagnosis of narcolepsy is not sufficient to demonstrate that the illness is severe" and affirming the ALJ's step three determination where the "[c]laimant ha[d] not argued that she satisfied any criteria for severity that would correspond to Listing 11.02.")

**C. Additional Medical Testimony**

Finally, Plaintiff claims the ALJ's disability determination is flawed because he failed to obtain the input of a medical expert after receiving Dr. Nagubadi's

11

updated July 2016 medical opinion. It is Plaintiff's position that the state agency consultants erroneously considered only Listing 3.10 (and not Listing 11.02) because they did not have access to Dr. Nagubadi's letter at the time they issued their opinions. Thus, Plaintiff claims, the ALJ should have submitted all the evidence, including the letter, to a medical expert to determine whether he met Listing 11.02.

Under SSR 96-6p, an ALJ must obtain an updated medical opinion from a medical expert if the ALJ receives additional medical evidence that, in his opinion, "may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." 1996 WL 374180, at *4. Although the Commissioner argues that the ALJ was not required to obtain an updated opinion because there was no "new evidence that would show medical equivalence to any listed impairments", the Court finds no basis for that argument in the ALJ's decision from the ALJ himself. In these situations under SSR 96-6p, the Commissioner cannot speak on behalf of the ALJ.

Nonetheless, the Court finds no reason to remand. Here, Plaintiff seeks remand so that a medical expert can consider Listing 11.02. As discussed earlier, there is no specific listing for narcolepsy, and ALJ's are only encouraged by POMS, to consider narcolepsy under Listing 11.02. While it would have been nice for the ALJ to get an updated medical opinion, the Court will not remand for something the

ALJ *could* have done, as opposed to something he required to do by law. The Court therefore affirms the findings of the ALJ.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 13] is granted. Affirmed.

**SO ORDERED.**                                         **ENTERED:**

**DATE:**    **June 6, 2018**

                                                    **HON. MARIA VALDEZ**
                                                    **United States Magistrate Judge**